(64 App. Div. 360.)

## BUCKBEE v. THIRD AVE. R. CO.

(Supreme Court, Appellate. Division, Second Department. October 4, 1901.)

1. **CARRIERS—STREET CAR COMPANY—PASSENGER—CAUSE OF INJURY—EVIDENCE —QUESTION FOR JURY.**

Plaintiff, a passenger on a street car, claimed to have been injured by an electric shock from the door sill while escaping from the car, the electric machinery of which was deranged. She was previously in perfect health, and had no previous disease which would account for her subsequent symptoms. The appearance of flames under the car was preceded by a loud report. The flames extended backward beneath the car for its entire length. Plaintiff testified to sensations indicating a shock of electricity. Experts testified that an electric shock would have caused plaintiff's injuries, and one physician testified that, while a blow on the back might also have caused them, he found on examination no evidence of such blow, and that under the circumstances he could not tell how plaintiff's condition arose unless it came from an electric shock. *Held*, that the evidence was sufficient to go to the jury on the question as to whether plaintiff's injury arose from a shock of electricity.

2. **SAME—ELECTRIC SHOCK—PERSONAL ASSAULT—MENTAL CONSEQUENCES—LIABILITY.**

An electric shock received by a passenger on a trolley car is a direct physical and personal assault, for the mental consequences of which the company, if negligent, may be held liable.

3. **SAME—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.**

In an action by a passenger against a street car company for injury from an electric shock, it appeared that flames broke from the controller box and extended beneath the car for its entire length, being preceded by a loud report. Plaintiff, in escaping from the car, stepped on the door sill and received a shock. It was proved that the phenomenon could not have existed if the electrical appliances of the car were in proper shape. After the accident the car was used the same day on four other trips without further harm. There was no evidence of any subsequent inspection, and no direct evidence that the car was out of order. *Held*, that defendant's negligence was a question for the jury.

4. **SAME—SPECIAL DAMAGES—ALLEGATION—AMENDMENT AT TRIAL.**

In a complaint against a street car company for injuries, plaintiff, a married woman, alleged that she could not in future properly attend to her household and other duties "and business." On the trial, the court permitted an amendment by adding, after the word "business," "of dressmaking, and the loss of income therefrom by reason," etc. *Held*, that the amendment was proper; the original allegation being sufficient to apprise defendant of a claim for special damages by reason of incapacity to attend to business.

5. **SAME—MARRIED WOMAN—SOLE TRADER—ABSENCE OF ALLEGATION—PRESENTATION IN LOWER COURT.**

Where, in an action by a married woman for personal injuries, an element of damages claimed was incapacity for carrying on plaintiff's business, the absence of an allegation that she was carrying on business on her own account cannot be taken advantage of on appeal; plaintiff having been allowed to prove her occupation without objection in the court below, and no instruction having been asked excluding a loss of earnings from her recovery.

Appeal from trial term, Westchester county.

Action for injuries by Mary A. Buckbee against the Third Avenue Railroad Company. From a judgment in favor of plaintiff, and an order denying a motion for a new trial on the minutes, the defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Eugene Treadwell (Henry L. Scheuerman, on the brief), for appellant.

S. S. Whitehouse, for respondent.

HIRSCHBERG, J. The plaintiff's judgment was recovered for damages alleged to have been sustained while she was a passenger on defendant's road. She was on a south-bound car on Third avenue, and as it approached 121st street she became alarmed at the sight of flames shooting from the controller box, and left the car. In stepping on or over the metal door sill at the rear of the car, she claims to have received an electric shock, resulting in the condition of injury of which she complains. The learned counsel for the appellant earnestly insist that there is no evidence in the case that she received an electric shock. There is evidence from which the jury might legitimately draw that inference. She was in perfect health and vigor at the time. She had no previous accident, and no previous disease occasioning any of the symptoms which appeared immediately after the occurrence, and which have since continued. The car was operated by electricity communicated from underground, and one witness testified that the flames extended beneath the car its entire length. The appearance of the flames was preceded by a loud report or explosion. Another witness testified that the flames started in front, and went underneath the car, burning a long while. The plaintiff testified that, as she was stepping through the doorway, she felt a "shock" in her feet, and, to quote her words, "a numbness and a stinging sensation in my feet, as I was about to go out of the door of the car. I felt that sensation in the soles of my feet. It extended up my legs up above the knee. It was a stinging prickly sensation in the feet, and numbness in the limbs; and I experienced severe pain in the back,—the lower region of the spine." A physician who examined her within two hours of the occurrence testified in detail to her condition at the time, and further testified that an electric shock received under the circumstances narrated by the plaintiff was adequate to cause it. On cross-examination, he testified that, while a blow or any injury in the lumbar region might also be an adequate cause, he found no marks or evidence of such a blow or injury, and that in his opinion, "if the lady received no electric shock whatever, she probably would not have been in the condition that she is." On redirect examination he stated that, assuming the plaintiff to have been strong and healthy on the day of the accident, having received no previous injury, and having then experienced the sensations described, he could not tell how the condition in which he found her was occasioned, unless it came from the electric current. Two other physicians who examined the plaintiff gave evidence of the existence of permanent injury, which they said an electric shock, received at the time, under the circumstances, and accompanied by the sensations described by her, would be sufficient to produce. There was no medical or other expert evidence to the con-

trary. This was abundantly sufficient to establish a prima facie case of injury resulting from electric shock. The plaintiff's statement that she experienced a shock, accompanied by the sensations which she described, is certainly some evidence that it was an electric shock, especially in view of the fact that at the time there were palpable manifestations that in some manner the electrical equipment of the car had become deranged, and the electrical current was obviously escaping. The symptoms immediately developed in the plaintiff, and the resultant permanent physical impairment being of such a character as an electrical shock would or could create, and being ascribable under the circumstances to no other known agency, furnish additional proof to the same effect. Whether the resulting condition would of itself be sufficient proof of the suspected cause is not the question. It has often been held that an ascertained condition of suffering or disease may be ascribed to a known previous injury on proof that the latter was sufficient to produce the former; and the logic of such decisions would probably warrant the conclusion that the existence of the condition might well be regarded as some proof of the necessary prior injury, especially where the circumstances of the case exclude every other origin. As was said by the court in Matteson v. Railroad Co., 35 N. Y. 487, 490, 91 Am. Dec. 67:

"Assuming that the witnesses were truthful, and that their testimony established the fact that Mrs. Matteson was suffering from an affection of the spinal column which tended to paralysis, it was impossible to prove, by direct evidence and with absolute certainty, from what cause the affection proceeded. Something was necessarily left to inference,—not a merely speculative, but a rational, inference, based upon all the circumstances of the case. The testimony, including that of the physicians, authorized the jury to find that, previous to the accident, Mrs. Matteson was free from a disease of the spine tending to paralysis; that immediately thereafter a disease of that nature began to be exhibited, and was subsequently manifested in increased force until the time of the trial; that on the occasion of the accident she received a jar or blow that was sufficient to produce such disease; and that no other cause was shown to which it could be reasonably ascribed. If the jury were satisfied of the truth of these positions, they were fully authorized, if not required, to find that the plaintiff's hypothesis respecting the nature and effects of the injury produced by the accident was correct."

See, also, Turner v. City of Newburgh, 109 N. Y. 301, 308, 16 N. E. 344, 4 Am. Rep. 453; Stouter v. Railway Co., 127 N. Y. 661, 665, 27 N. E. 805; Keane v. Village of Waterford, 130 N. Y. 188, 29 N. E. 130; Quinn v. O'Keefe, 9 App. Div. 68, 41 N. Y. Supp. 116.

What has been said disposes of most of the objections raised in opposition to the hypothetical questions permitted by the court to be asked the medical witnesses. Other objections have been examined, and found not well taken, or not applicable to any inaccuracy which may have been exhibited in the framing of the questions. It also serves to distinguish the case from Mitchell v. Railway Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604, wherein it was held that there can be no mental shock unconnected with a direct physical attack. Assuming that the doctrine of that case is applicable to a common carrier engaged in the actual transportation of a passenger for hire, the shock occasioned by contact with an

electric current must be regarded as a direct physical and personal assault, for which a negligent defendant may be held liable. Besides, the jury was instructed that there could be no recovery for mere fright, or for its consequences.

The defendant's negligence was not only established by the evidence already reverted to, but also by proof that the phenomenon described could not have existed if the electrical appliances of the car were in proper shape. There was evidence that the car, after the accident, was used the same day on four through trips without further harm; but there was no evidence of any subsequent inspection, and no direct evidence that it was not out of order. Under these circumstances the positive evidence was not sufficient to justify the assumption that the defendant was free from blame as matter of law. The question of the defendant's negligence, and all other questions arising in the case, were submitted to the jury in a charge that was thorough, fair, accurate, and impartial, and to which no exception was taken by the defendant.

The plaintiff is a married woman. For some years she has lived apart from her husband, whose whereabouts are unknown to her, and she has supported herself by the business of dressmaking, conducted on her sole behalf. It is urged that she could not recover on the original complaint for any incapacity in the conduct of that business occasioned by the accident, and that the learned trial justice erred in permitting an amendment of the complaint upon the trial, and in denying the motion of the defendant for a postponement upon the allegation of surprise. It was alleged in the complaint as originally framed that by reason of the accident and its consequences the plaintiff had been, and "will be in the future, maimed and disabled from properly attending to her household and other duties and business." This plainly admonished the defendant that she would claim special damages by reason of injury to her business. The nature of her business was not disclosed, and in that respect the complaint may be deemed vague and uncertain; but the defendant could have had it made more definite, and could have procured the particulars before trial. On the trial the court permitted an amendment by adding to the words herein quoted the words, "of dressmaking, and the loss of income therefrom, by reason of being maimed and disabled as aforesaid." There was no allegation of surprise on the part of the defendant that the business was dressmaking, rather than some other business; but the surprise manifested was as to the fact that there was any claim for special damage because of the impaired power to conduct business. The amendment, if necessary, was within the discretion of the trial court, and there is nothing in the case to require a reversal by this court because of its exercise. The cases of Freeland v. Railroad Co., 54 App. Div. 90, 66 N. Y. Supp. 321, and Edge v. Railroad Co., 57 App. Div. 29, 67 N. Y. Supp. 1002, are easily distinguishable from this one. In the former a recovery was had for an item of special damage not set up in the complaint at all. In the latter an amendment was allowed adding an item of special damage, of which the original complaint contained no suggestion. In

neither case was the special damage originally alleged.   Here it was alleged, although so indefinitely as probably to require an amendment making it more specific and definite, and which amendment was within the power and discretion of the trial court.

But the learned counsel for the appellant insist that there being no allegation in the complaint, either originally or as amended, to the effect that the plaintiff, a married woman, was carrying on the business on her own account, it was improper to allow proof of the amount of her earnings in the business as a basis of recovery.   The case of Uransky v. Railroad Co., 118 N. Y. 304, 23 N. E. 451, 16 Am. St. Rep. 759, may be regarded as authority for this contention, unless the broad language of the domestic relations law (chapter 272, Laws 1896), passed since that decision, has served to qualify its effect.   A married woman by the express terms of that act may carry on any trade or business as if she were unmarried, and not, as formerly, only upon her election to do so upon her own account. But this question was not raised upon the trial, and should not be permitted to be raised for the first time upon appeal.   The plaintiff upon the trial was allowed to prove without objection that she had not lived with her husband for nearly eight years, and that she was engaged at the time of the accident in the occupation of dressmaking, and had been for over three years.   She was then asked the question, "Did you have a business?" to which she answered, "Yes, sir."   Whereupon she was asked the question, "And that business was what?"   Here the objection was made for the first time, "on the ground that it is not sufficiently alleged in the pleadings to base proof of special damage upon."   The form of the objection, the colloquy which followed between the court and counsel, and the amendment finally allowed, all attest that the only objection urged was as to the name and character of the business, already disclosed without objection, and not at all to the right of the plaintiff to carry it on on her own account, or to the absence of such an allegation from the complaint.   The objection was as to the right of the plaintiff to prove, under the allegations of her complaint, the kind of business she carried on; and her right to carry on business in her own name and on her own account was not then questioned.   Nor was her right questioned to recover for damages done to her business by the accident, provided the nature of the business had been specifically set forth. Nowhere does the point appear to have been distinctly presented that the complaint was defective because it did not allege the conduct of a business by the plaintiff upon her own account, or that she could not, therefore, recover for loss of earnings.   There was, indeed, a motion at the close of the plaintiff's case to strike the evidence now under consideration from the record, which motion was denied, and properly so if the evidence was received at the time without a valid objection.   Jones v. Railway Co., 63 App. Div. 607, 71 N. Y. Supp. 647.   But there was no request to charge the jury that the plaintiff could not recover for loss of earnings in her business, and no exception to the charge as made by the court upon the subject of the damages which were lawfully recoverable.   Whether the

point now presented is sound or not need not, therefore, be determined in the disposition of this appeal.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.