WASHINGTON TRUST CO. v. MORSE IRON WORKS & DRY DOCK CO. et al.

(Supreme Court, Appellate Division, Second Department.   June 23, 1905.)

1. CONDITIONAL SALE—MORTGAGE BY PURCHASER.
   The purchaser in a conditional sale has a mortgageable interest in the property.

2. MORTGAGES—AFTER-ACQUIRED PROPERTY.
   A mortgage may cover after-acquired property.
   [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Chattel Mortgages, §§ 61–66.]

3. SAME—RECORD.
   Under Laws 1897, p. 536, c. 418, § 91, providing that mortgages by a corporation on real and personal property to secure bonds need not be refiled as chattel mortgages, such a mortgage describing both real and personal property is a lien on the personalty, although recorded only as a real estate mortgage.

4. SAME—PROPERTY INCLUDED.
   Where a mortgage securing certain bonds purported to convey the real estate, water rights, and dry dock of the mortgagor, together with all the tenements, hereditaments, and appurtenances belonging to the property, all rights in real property, buildings, wharves, piers, dry docks, wet docks, floating docks, and their appurtenances, all leasehold rights, letters patent, and licenses, and all corporate rights, including all property at the time used or to be used in the future in connection with the real estate, and belonging to the mortgagor, whether attached to the realty or not, the mortgage covered the complete plant of the mortgagor.

5. SAME—AFTER-ACQUIRED PROPERTY—CONDITIONAL SALE—RIGHTS OF SELLER.
   Where a mortgage covers after-acquired property, such property acquired under a conditional sale comes under the mortgage, subject to the terms of the sale.

6. SAME—FORECLOSURE.
   Property sold by conditional sale became part of a manufacturing plant which was covered by a mortgage purporting to convey after-acquired property. Before the purchase price of the conditional sale was paid, the mortgage was foreclosed, and the property ordered to be sold free from all liens. Held, that the seller in the conditional sale was entitled to receive from the proceeds of the foreclosure the amount still due on the price.

Appeal from Special Term, Kings County.

Action by the Washington Trust Company of the City of New York, as trustee, against the Morse Iron Works & Dry Dock Company and others. From a judgment for plaintiff, the defendant named and certain other defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

David McClure, for appellants Cooney and other defendants.

Henry G. Ward (George M. Clarke, on the brief), for respondent Prindle Engineering Company.

JENKS, J. This action is to foreclose a mortgage of the corporation called Morse Iron Works & Dry Dock Company, made in April, 1900, to the plaintiff trustee, to secure its bond issue. The mortgage in terms covered all the mortgagor's property and appurtenances, acquired or to be acquired. The property included certain real estate, with water rights and a dry dock. In September, 1900, the Prindle Engineering Company contracted with the said mortgagor to construct and to furnish a flooding and pumping plant for the latter's business. The mortgagor did not comply with the terms of payment for this pump, and so, in February, 1903, there was made a supplemental agreement which provided for the payment of the balance by three notes, due at different times. In April, 1903, the mortgagor defaulted on its bonds, and in October, 1903, this action was begun. The notes for the pump were never paid, and the Prindle Company is a defendant in this foreclosure suit.

The question upon this appeal arises from this purchase of the pump, and it is raised only by certain other defendants, who are respectively the trustee in bankruptcy and certain of its creditors. So far as this question is involved, the Special Term found as facts that in September, 1900, the Prindle Company contracted to furnish a complete flooding and pumping plant for a certain dry dock then under construction for the mortgagor; "that the said dry dock is a movable, floating structure, rising and falling with the tide, and not affixed to the earth in any way, but held in place between two piers by side timbers"; that the mortgagor agreed to pay $60,000 therefor, and also agreed that title to the apparatus and machinery constituting said flooding and pumping plant should remain in the said Prindle Company until the same was fully paid for; that thereafter the said Prindle Company furnished and erected said flooding and pumping plant, and the said mortgagor paid on account of the purchase price $33,847.86, leaving due $26,152.14; that in February, 1903, the said parties entered into a written agreement supplemental to the said agreement of September, 1900, whereby the said mortgagor was to give to the Prindle Company for said balance three notes, each for $8,717.38, payable respectively in November, 1903, February, 1904, and August, 1904; that the giving and the acceptance of the notes was not to be regarded as payment; that, if default were made in the payment of any one of said notes, the whole outstanding balance should become immediately due and payable; and that until payment of all of said three notes the title to the said plant should remain in the Prindle Company, as provided in the original agreement of September, 1900. It also found that default was made in the payment of the first of said

notes, after due presentation, and that the said flooding and pumping plant "is still in said dry dock, and has long been used therein." The pertinent conclusions of law are the second, that the said mortgage covers and is a lien upon the property described in terms therein, and upon the real estate specifically described in paragraph 6 of the second amended complaint, and also upon the dry dock and personal property enumerated in the schedule of personal property annexed; the fifth, that the title to the flooding and pumping plant installed by the Prindle Company is and always has been in it; "that plaintiff's mortgage covers the dry dock in which such plant is installed," and said Prindle Company is entitled to judgment; that out of the funds realized upon the sale of the property covered by plaintiff's mortgage there shall be paid to said Prindle Company $26,162.14, with interest from February 6, 1903, before distribution of the proceeds of sale to the holders of any of the bonds; and the sixth, that the property covered by the mortgage be sold in one parcel, free from any lien or claim on the part of the defendants (there was the exception of one parcel of realty which was to be sold subject to a certain mortgage), and that after payment of the costs, allowance to the trustee, and costs of the sale, there should be paid the said amount due to the Prindle Company. No exceptions were filed to any of the findings of fact which dealt with this question of the purchase and use of the pumping plant. Exceptions were filed to the second, third, fifth, and sixth conclusions of law.

The contention of the learned counsel for the appellants is against the provision of the decree which affords payment of the balance due to the Prindle Company. I understand that there is no quarrel with the determination as to its title to the plant, and to its right to any separate remedy which it has, based upon the terms of the sale, and the default of the mortgagor in its payments under the contract. Obviously the decree is based upon the theory that the mortgage covered the interest of the mortgagee in the plant, and that it was the wisest course to sell all of the property covered by the mortgage in one parcel, free from all liens and the like, but that in such event the Prindle Company was entitled to the payment from the proceeds of the sale of the balance due upon the purchase price, before any application of such proceeds to the payment of the bondholders or any other creditors.

It would seem inequitable that the mortgagee or other creditors should receive the benefit of a sale which comprised the property of the Prindle Company, without provision in the first instance for full payment for that property. If the policy of the decree can be sustained by law, I see no reason why it should be reversed. Follett, J., in Crane v. Turner, 7 Hun, 357, 358, affirmed 67 N. Y. 437, says:

"Any present interest, legal or equitable, in real or personal property, which can be the subject of a sale, may be the subject of a mortgage. 1 Hilliard on Mortgages, c. 1, § 4; 4 Kent's Com. 144."

See, too, Thomas on Mortgages, 53; Friedman v. Phillips, 84 App. Div. 179, 82 N. Y. Supp. 96.

I think that under the conditional sale the purchaser had a mortgageable interest in this pumping plant. I think, also, that the mortgagor could execute a mortgage which contemplated and covered its after-acquired property. New York Security Co. v. Saratoga Gas Co., 88 Hun, 569, 587 et seq., 34 N. Y. Supp. 890, affirmed on opinion below 157 N. Y. 689, 51 N. E. 1092; Platt v. New York & Sea Beach R. Co., 9 App. Div. 87, 41 N. Y. Supp. 42, affirmed 153 N. Y. 670, 48 N. E. 1106; Benjamin v. Elmira, Jefferson & Canandaigua R. Co., 49 Barb. 441, affirmed 54 N. Y. 675; Halmy v. Marshall, 10 H. of L. 191, cited in Jones on Mortgages, § 152. I agree with the learned judge at Special Term that "the mortgage is a lien on the personal property of the mortgagor, notwithstanding it was recorded only as a real estate mortgage. Such appears to be the effect of section 91 of the lien law (Laws 1897, p. 536, c. 418)." And I also agree with the learned judge that "upon the whole case, considering the financial scheme on which the securities were issued, and the launching of the new enterprise, the bondholders had a right to look to the complete plant, and such was the intention of the mortgage or deed of trust." The granting clause of the mortgage concludes:

"Together with all and singular the tenements, hereditaments and appurtenances, belonging to the property hereby conveyed, or in any wise thereto belonging, and the reversions, remainders, incomes, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity of the party of the first part of, in and to the same and any and every part thereof, with the appurtenances; and also all and every other estate, right, title and interest in and to the real property, buildings, wharves, piers, dry docks, wet docks, floating docks and their appurtenances, as the said party of the first part may hereafter acquire, and in all leasehold, leases and rights under leases, letters-patent and licenses thereunder now held or hereafter acquired, and in all corporate rights, privileges and franchises which the said company now has or hereafter may or shall acquire, possess or exercise."

And the mortgagor covenanted:

"Said company shall from time to time during the continuance of this trust and mortgage make, execute and deliver all such further instruments and conveyances as may be necessary to vest in said trustee and its successor or successors the within described and all subsequently acquired property and rights of property, of a similar nature and description to that above mentioned, to facilitate the execution of said trust."

Further, paragraph 14 of the instrument provides:

"The property hereby conveyed or intended so to be, and any and all other property now or hereafter used, or to be used in connection with said real estate and belonging to the said company, whether attached to said realty or disconnected therefrom, or partly attached and partly disconnected, shall be real estate for all the purposes of the instrument, and shall be held and taken to be fixtures and appurtenances of the said mortgaged premises and part thereof, and are to be used and sold therewith and not separately therefrom."

See, too, Gates v. De La Mare, 142 N. Y. 307, 37 N. E. 121; McRea v. Central Nat. Bank, 66 N. Y. 489.

But the property came under the mortgage subject to the terms of the conditional sale. Jones on Mortgages, § 158; Coman v.

Lakey, 80 N. Y. 345; McFadden v. Allen, 134 N. Y. 489, 491, 32 N. E. 21, 19 L. R. A. 446; Haven v. Emery, 33 N. H. 66; Goodwin v. May, 23 Ga. 205; New Orleans Railroad v. Mellen, 12 Wall. 362, 20 L. Ed. 434; Taylor v. Trustees, 11 West. Jur. 337, 349; Jones on Corp. Bonds & Mortgages, 118; Mott v. Havana National Bank, 22 Hun, 357; Sayles v. National Water Purifying Co. (Sup.) 16 N. Y. Supp. 555, affirmed 141 N. Y. 603, 36 N. E. 740. Jones on Mortgages, supra, says:

"Property subsequently acquired under a conditional sale comes under the mortgage subject to the terms of such sale."

In Coman v. Lakey, supra, the court, per Church, C. J., say:

"The vendors' rights are secured by a law higher than, and independent of, the statute. They grow out of the transaction itself, and are not dependent entirely upon the act of the corporation in creating a lien, but arise from the act of the vendors in transferring the property, subject to the payment of the purchase money, and are secured by the rule which protects equitable liens of vendors, and which courts will be astute to enforce, in order to effectuate the real intent of the parties, and require them to do whatever is necessary to conform their acts to the essential nature of the transaction."

In McFadden v. Allen, supra, the court, per Follett, C. J., say:

"A mortgagee of real property is entitled to have his lien respected as to all that was realty when he accepted the security; also as to all accession to the realty, save, perhaps, when the accession is made under an arrangement with the party that its purchase price or expense shall be secured and is secured by a lien thereon."

There is nothing in the record to show that the defendant trustee in bankruptcy and these other creditors, who, as I have said, are the sole appellants, are without the rule laid down, even as to bona fide purchasers, in Austin v. Dye, 46 N. Y. 500, and Comer v. Cunningham, 77 N. Y. 391, 33 Am. Rep. 626, or within the limitation of the rule laid down in Spring v. Short, 90 N. Y. 538. See, too, Thomas on Mortgages, p. 47.

The contention that the conditional contract was not filed as required by section 112 of the lien law is met by Graves Elevator Co. v. Callanan, 11 App. Div. 301, 42 N. Y. Supp. 930.

The learned and able counsel for the appellants writes in his points:

"The Prindle Company's rights are in the property to which it claims and has been found to have title, but it is not entitled to the enforcement in this action of its legal rights against the Morse Company."

But the mere finding that title was still in the Prindle Company under the conditional sale is not necessarily exclusive of the existence of a mortgageable interest therein of the Morse Company; and if that mortgageable interest has been mortgaged, and the property inclusive of the property sold by the Prindle Company is to be sold free of all liens, I see no legal reason why the court of equity cannot make provision in this action for a discharge of the equitable lien of the Prindle Company, as it has done. Older v. Russell, 8 App. Div. 518, 40 N. Y. Supp. 892; Metropolitan Trust Co. v. Tonawanda, etc., R. Co., 18 Abb. N. C. 368; Jacobie v. Mickle, 144 N. Y. 237, 39 N. E. 66; Brown v. Volkening, 64 N. Y. 76; Brown v.

Keeney Settlement Cheese Ass'n, 59 N. Y. 242. In Metropolitan Trust Co. v. Tonawanda, etc., R. Co., 18 Abb. N. C. 368, the court, per Bradley, J., say at page 378:

"While the defendant is not a necessary party defendant to the action for the foreclosure of the plaintiff's mortgage, and the defendant's cause of action may not arise out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, it seems to be connected with the subject of the action. The requisite of connection of the defendant's cause of action with the subject of the plaintiff's action is not defined or restricted by the provisions of the statute. There must only be some connection. And it has been said that it 'must have such relation to and connection with the subject of the action that it will be just and equitable that the controversy between the parties as to the matters alleged in the complaint and in the counterclaim should be settled in one action by one litigation.' Carpenter v. Manhattan Life Ins. Co., 93 N. Y. 552, 556."

The proposition of the learned counsel for the appellants is either that the Prindle Company should retake its pumping apparatus or litigate its claim for the balance of the purchase price, and simply relegates the purchaser to a retaking of the plant after its long use and with its consequent depreciation, or in pursuing a debtor stripped of all means of payment; and this is advanced only in the interest of general creditors, whose claims appear as subsequent to the mortgage, and the trustee, who has not excepted to the foreclosure of his interest in all of the property covered by the mortgage.

The judgment must be affirmed, with costs. All concur.