BLANCOB CONSTRUCTION CORP. et al., Appellants, *v.* 246 BEAUMONT EQUITY, INC., et al., Defendants; MANUFACTURERS HANOVER TRUST COMPANY, Respondent.

First Department, July 8, 1965.

*George Sassower* of counsel (*Sassower & Sassower,* attorneys), for appellants.

*William Doischen* of counsel (*Samuel Friedman,* attorney), for respondent.

EAGER, J. This is an action to foreclose a real estate mortgage on an apartment building. The mortgage purportedly contained a standard " after-acquired " property clause, and the plaintiffs (mortgagees) claim priority over the assignee of a conditional sale contract covering a heating boiler, oil burner and oil storage tank installed by the conditional vendor after the execution and delivery of the mortgage. The plaintiffs moved at Special Term to strike the answer of the assignee as a defendant and for summary judgment. Special Term denied the motion, noting that the conditional sale contract was properly filed and that it was conceded that the heating equipment was personal property. The plaintiffs appeal from the order of Special Term.

It is conceded that the conditionally sold heating equipment was installed in the mortgaged premises to replace a coal-burning boiler and system and that the removal of the coal-burning equipment and the installation of the new oil-burning equipment was without consent of the mortgagees. On this basis, the plaintiffs, citing *Roche* v. *Thurber* (246 App. Div. 850, affd. 272 N. Y. 582) as a case in point, urged that the title of the defendant assignee of the conditional vendor should be subordinated to a lien acquired under plaintiffs' mortgage by virtue of the " after-acquired" property clause contained therein. We have concluded, however, that the plaintiffs, having the burden of proof on their motion, have failed to present a factual showing entitling them to summary judgment.

Furthermore, in view of the uncertainty of the law in this area, as hereinafter pointed out, we deem it necessary to examine and analyze *Roche* v. *Thurber* (*supra*) and to define its effect in light of prevailing and settled general principles.

It was well settled in New York prior to and upon the adoption of the Uniform Conditional Sales Act that the title of a conditional vendor to removable fixtures installed upon realty was superior to the lien of a prior mortgage containing the standard " after-acquired" property clause. (See *Davis* v. *Bliss,* 187 N. Y. 77; *Connecticut Gen. Life Ins. Co.* v. *Rea,* 265 App. Div. 870; *Herold* v. *Cohrone Boat Co.,* 249 App. Div. 318; *Washington Trust Co.* v. *Morse Iron Works,* 106 App. Div. 195, 200; *Modern Security Co.* v. *Thwaites,* 138 Misc. 469, affd. 234 App. Div. 671; *New York Plumbers Specialty Co.* v. *Manhattan Sav. Bank,* 47 N. Y. S. 2d 504; 38 N. Y. Jur., Mortgages and Deeds of Trust, § 46; " Mortgage-After Acquired Property ", Ann. 86 ALR 2d 1152, 1154, 1157; 3 Jones, Chattel Mortgages and Conditional Sales, §§ 1406, 1407, 1409; 1 Wiltsie, Mortgage Foreclosure [5th ed.], § 265, p. 472. Also, see, Personal Property Law, § 67.) And this, it seems, now is the rule under the provisions of the

Uniform Commercial Code. (See Uniform Commercial Code, §§ 9-108, 9-204, 9-303. See, also, 1955 Report of N. Y. Law Rev. Comm., "Study of the Uniform Commercial Code", vol. 3, p. 2062.)

The general rule, too, was that the conditional vendor's title to the removable fixtures was to be preferred even though the fixtures replaced other similar fixtures which were embraced by the lien of the realty mortgage. Professor William H. Farnham of the Cornell Law School, in 1942, reviewing the decisions in connection with a study by the Law Revision Commission, stated (1942 Report of N. Y. Law Rev. Comm., p. 701):

"The conditional seller's claim to the fixture should be preferred even where it was installed in substitution for a fixture already covered by the lien of the realty mortgagee or contract-vendor of the land. In such event the remedy of the holder of a prior interest in the realty is an action for damages against the person or persons who effected or participated in the wrongful removal of the old fixture. While conditional sellers frequently take part in such wrong-doing by accepting as part payment for new fixtures old equipment which has been unlawfully severed from the realty by conditional buyers, or even by themselves, and are thus equitably bound to make compensation, it does not follow that the aggrieved parties should have the privilege of taking the new fixture in lieu of compensation. To permit them such an option would bring them a large windfall and inflict a shocking forfeiture on the conditional seller in every case in which the value of the new fixture greatly exceeded the damage done to the land by the unlawful removal of the old. Difficulty in measuring damages does not justify resort to so penal a rule.

"The conditional seller of the fixture should not be compelled to seek the assent of holders of prior interests in the realty in order to preserve his equity in the fixture. Being a seller, rather than a buyer, the realty records are not technically constructive notice to him. Moreover, the expense of searching the title to the land to which the fixtures are to be annexed would in many cases be so great as to make a conditional sale impracticable, thus hindering trade and retarding the development of land."

The general rule or "majority view" affording the conditional vendor priority over the lien of the after-acquired property clause was, as noted by Professor Farnham, consistently followed by a number of decisions in New York until the "uncertain and possibly dissonant note sounded in 1936 in *Roche* v. *Thurber* [*supra*]" (p. 704); and this decision has undoubtedly resulted

in an uncertainty of the law in this particular area. (See 1942 Report of N. Y. Law Rev. Comm., *supra,* pp. 704–710, and cases cited.) The decision has been criticized. (Gilmore, Purchase Money Priority, 76 Harv. L. Rev. 1333, 1366–1367 [1962–63]. See, also, Kripke, Fixtures Under the Uniform Commercial Code, 64 Col. L. Rev. 44, 78–79 [1964].)

Incidentally, the problem was under consideration in connection with the adoption of the Uniform Commercial Code, but, it was noted that "remedies are readily available" to real property mortgagees. They "presumably have an action for damages against the owner, and against the fixture secured party if he has accepted the old article as a trade-in. In an aggravated case of willful removal of sound and modern articles, more drastic remedies might be appropriate [citing *Roche* v. *Thurber, supra*]. It is recommended that this matter be left for future judicial development. The scarcity of cases and the lack of response to the New York Law Revision Commission study [Prof. Farnham's study referred to, *supra*], indicate that no tinkering with the statute on this point is necessary." (64 Col. L. Rev., *supra,* pp. 78–79.)

The decision in the *Roche* case was rendered in an action to foreclose a real estate mortgage containing an "after-acquired" property clause. Certain defendants "claimed a lien superior to the mortgage on the heating plant that was installed by virtue of a conditional sales contract duly filed, after the mortgage had been executed and recorded. The heating plant then in the building was removed and disposed of by [defendants] when the new heating plant was installed. The removal of the heating plant and the installation of the new one in its place were without the knowledge and consent of the mortgagee." (246 App. Div. 850.) The *sine qua non* of the decision is to be found in the statement in the memorandum opinion that: "By removing the heating plant already installed in the building without the consent of the mortgagee, the vendor impaired the security of the mortgage" (p. 850). The reasoning of the court was that the wrongful impairment of the mortgagee's security justified a subordination of the conditional vendor's title. (See 76 Harv. L. Rev., *supra,* p. 1366.)

Of course, it is well settled that any and all persons, including a conditional vendor, are bound to refrain from willfully impairing the security of a real estate mortgagee. So, where a conditional vendor wrongfully removes an existing fixture and then substitutes conditionally sold property, he may be held liable in damages. In a proper case, he must make, or bear the expense of, such repairs as are necessary to put the building in as good

a condition as it would have been in, if the old fixture had not been removed. (See 2A Uniform Laws Ann., Conditional Sales, p. 102, and cases cited. Also, 1942 Report of N. Y. Law Rev. Comm., *supra,* pp. 701, 702.)

On general principles, however, the wrongful act of the vendor would not operate to divest him of his legally established title to the conditionally sold fixtures which replaced existing fixtures. While in a proper case equitable doctrine may be applied to subject the vendor's claim to a proper offset or to estop him from asserting his title, as against the prior mortgagee, such a result would not follow in every case without regard to values and equities involved. Certainly, if the conditional vendor, without the consent of the mortgagee, removes equipment subject to the mortgage, he should be required to account to the mortgagee for its fair value. But, if worn out or valueless equipment is replaced by new equipment, there would be no impairment of the mortgagee's security; if the equipment, which was replaced without the mortgagee's consent, was serviceable and of some value, the priorities may appropriately be reversed to the extent of the impairment of the mortgagee's security. "But the mere fact that new equipment has been substituted for the old does not require so drastic a solution" as a forfeiture of the conditional vendor's title. (See 76 Harv. L. Rev., *supra,* pp. 1366–1367.)

*Roche* v. *Thurber* (*supra*) is readily reconcilable with the foregoing conclusions. The record there shows that the conditional vendor was properly held to be estopped on equitable principles from asserting the priority of his title. In fact, the plaintiff mortgagee, in her briefs in the Appellate Division and in the Court of Appeals, specifically urged that the vendor " is estopped to assert title against the plaintiff " and that the broad principles of equity should control the court's decision.

With the foregoing in mind, the effect of the *Roche* decision as a precedent is to be viewed in light of the fact that there was in the record " no proof as to the condition of the heating plant removed, as to its value or sufficiency, or concerning the necessity of a new heating plant; nor is there any description either as to the manner of how these heating plants were affixed to the premises, or whether one or the other was severable therefrom without material injury to the freehold." (246 App. Div. 850.) On the other hand, in the case at bar, it appears that the conditionally sold oil-heating equipment may be removed without material injury to the building. Furthermore, the record here lacks proper proof as to the condition or value of the former heating equipment allegedly removed by the vendor. The

defendant, according to its brief, claims that it was valueless and that the cash value of the new equipment installed was $12,000.

The plaintiffs, moving for summary judgment, had the burden of presenting by affidavit or documents the material facts in evidentiary form tending to establish that there was no genuine issue of fact bearing upon the question of priorities. There should have been presented to the court all the facts and details having a bearing upon the question whether, by virtue of equitable principles or otherwise, defendant's title should be subordinated to the lien of plaintiffs' mortgage. But the plaintiffs' moving affidavits and the records are devoid of essential evidentiary data. For instance, the court was not furnished with a copy of the "after-acquired" property clause under which plaintiffs claim nor with a copy of the conditional sale contract relied upon by defendant. We do not have a description of the coal-burning boiler removed, nor proper evidentiary data as to its value, condition or sufficiency at time of removal; and we are not furnished with a description of or a statement as to the value of the new equipment. Finally, we do not know to what extent and in what manner the removal of the conditionally sold equipment will affect or injure the building itself. Perhaps, the oil burner and the oil tank can, in any event, be removed, without impairing the mortgagee's security.

We have not overlooked the general statement in *Roche* v. *Thurber* (*supra*) that the burden was upon the conditional vendor to show that the removed equipment was valueless and that the new conditionally sold equipment was removable without injury to the freehold. Such statement, however, as a conclusion reached on the basis of the particular record there, cannot be accepted as shifting the over-all burden which was upon plaintiffs to establish the basis for their equitable claim to priority.

The order of Special Term denying plaintiffs' motion for summary judgment should be affirmed, with costs and disbursements.

BOTEIN, P. J., BREITEL, VALENTE and STEUER, JJ., concur.

Order, entered on March 5, 1965, unanimously affirmed, with $30 costs and disbursements to respondent.